# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

MATTHEW A. BOLES, )
)
        Plaintiff, )
)
) Case No. CIV-18-320-KEW
)
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION, )
)
        Defendant. )

## OPINION AND ORDER

Plaintiff Matthew A. Boles (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. § 404.1520.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. § 404.1521. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 42 years old at the time of the decision. He has a college and a graduate degree. He worked in the past as a head janitor, aircraft mechanic, and nursing home administrator. Claimant alleges an inability to work beginning on February 6, 2015, due to limitations resulting from obesity, bilateral shoulder and elbow impairment, depression, and anxiety.

### Procedural History

On April 1, 2015, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On February 23, 2017, the Administrative Law Judge("ALJ") John W.

3

Belcher conducted a video hearing, in which Claimant participated. On April 6, 2017, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on May 23, 2017, it denied review. Claimant appealed the denial of benefits to this Court, at which time the Commissioner agreed to a remand. The case was remanded by this Court on February 2, 2018. On June 14, 2018, ALJ David W. Engel held a second administrative hearing, at which Claimant was present. He entered an unfavorable decision on August 1, 2018. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.984.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work, with limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) reaching an improper RFC, and (2) making improper findings at step five.

### RFC Determination

In his decision, the ALJ found Claimant suffered from severe impairments of obesity, bilateral shoulder and elbow impairment, depression, and anxiety. (Tr. 1264). He determined Claimant could

4

perform sedentary work with respect to lifting, carrying, pushing, and pulling. Claimant could perform light or sedentary work with respect to walking or standing. He was unable to climb ladders and scaffolds and could not work in environments with exposure to unprotected heights and dangerous moving machinery parts. Claimant could not perform tasks requiring overhead reaching for purposes of hand controls more than occasionally. He could understand, remember, and carry out simple to moderately detailed instructions in a work-related setting, defined as not more than semi-skilled level work. Claimant suffered from symptoms from a variety of sources, including pain and fatigue and allied disorders, that were of sufficient severity to be noticeable to him at all times, but he was able to remain attentive and responsive in a work setting and could perform work assignments within the determined limitations. (Tr. 1268).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of receptionist, order clerk, and entry operator, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 1285-86). As a result, the ALJ concluded that Claimant was not under a disability from February 6, 2015, his alleged onset date, through December 31, 2017, the date last insured. (Tr. 1286).

Claimant contends the ALJ's RFC assessment overstates his physical and mental capabilities. His argument primarily focuses

5

on the ALJ's treatment of the limitations related to his ability to lift and reach overhead and the ALJ's weighing of the opinion evidence in this regard.

The ALJ discussed evidence regarding Claimant's shoulders, including X rays of the cervical spine from April 23, 2015, which revealed minimal posterior sclerosis at C4-C5 and C5-C6, suggesting mild degenerative changes. An X ray of Claimant's left shoulder from that same date showed the shoulder was normal, except for calcification in the soft tissue, which suggested an old ligamentous injury. X rays of Claimant's left elbow also revealed no abnormality. (Tr. 1271-72, 479-82). Claimant's MRI of the left shoulder in July of 2015 showed "post-surgical changes of subacromial decompression and distal clavicular resection with foci of magnetic susceptibility artifact around the anterior rotator cuff and acromioclavicular joint. The MRI showed degenerative and bursal surface fraying of the supraspinatus and infraspinatus tendons without rotator cuff tear or atrophy. The MRI showed thickening of the coracohumeral ligament, with mild scarring in the rotator interval." (Tr. 1273, 722-23). An MRI of the right shoulder from February of 2016 showed "mild bursal-sided edema, involving distal supraspinatus and infraspinatus tendon fibers. There were no partial or full-thickness rotator cuff tears." However, there was a small amount of fluid at the level of the surgical bed and trace amounts of fluid in the sub-acromial

sub-deltoid bursa.  An MRI of the left shoulder from the same date revealed "mild bursal-sided edema, involving the distal supraspinatus and infraspinatus tendon fibers" and no partial or full-thickness rotator cuff tears.  There was a moderate amount of fluid and edema in the sub-acromial, sub-deltoid bursa. (Tr. 1273, 1136-40).

The ALJ also discussed Dr. Carl Huff's examination of Claimant on February 10, 2016, wherein he noted marked tenderness overlying the rotator cuff bilaterally.  Dr. Huff assessed Claimant with impingement syndrome, with rotator cuff tendinopathy, and noted he was a candidate for arthroscopic surgery of both shoulders. (Tr. 1273, 1080).  The ALJ concluded these findings were not inconsistent with a limitation to sedentary pushing/pulling and only occasional overhead reaching. (Tr. 1273).

The ALJ considered X rays of Claimant's cervical spine and his right and left shoulders from August of 2016.  The X ray of the cervical spine was within normal limits.  The X rays of Claimant's right and left shoulder showed "status post resection of portion of distal clavicle and acromion," but they were otherwise normal.  (Tr. 1275, 1102-03).

The ALJ discussed the consultative examination of Claimant by Harold DeLaughter, D.O., on September 9, 2016. Among other issues, Claimant reported having problems with his arms since 2003.  He had full and pain-free range of motion of his neck.  He had a full

7

range of motion of the spine. Grip strength was equal bilaterally at 5/5, finger to thumb opposition was adequate, and fine tactile manipulation of objects was normal. Claimant would not perform bilateral shoulder testing, elbow testing, hand testing, or wrist testing due to pain in those areas. There was no notation of guarding of the arms when Claimant ambulated. The ALJ noted that although Claimant could not tolerate range of motion testing of his shoulders, elbows, hands, and wrists, he could "effectively oppose the thumb to the fingertips, manipulate small objects and effectively grasp tools such as a hammer." Claimant performed the tasks without any indication of restriction or abnormality. (Tr. 1275-76, 1105-11). The ALJ further discussed the medical source statement completed by Dr. DeLaughter. With regard to Claimant's shoulders, Dr. DeLaughter determined that Claimant could occasionally lift and/or carry up to ten pounds, was unable to reach overhead, was limited to occasional reaching in all other directions, was limited to frequent handling, fingering, and feeling, and limited to occasional pushing and/or pulling. (Tr. 1281-82, 1112-18).

The ALJ discussed at length testimony from Claimant's first administrative hearing by medical expert Don R. Clark, M.D. (Tr. 1277-79). With regard to Dr. DeLaughter's examination and limitations on Claimant, Dr. Clark discussed the findings reaching conclusions that Claimant did not have limitations in manual

8

dexterity because of his ability to grasp tools, manipulate objects, and oppose the thumb to forefingers. He believed a lifting and carrying restriction of ten pounds was reasonable. He also determined that Claimant's difficulty with his upper extremities was based upon symptoms of pain and not any limitation of muscle or mobility. (Tr. 1278). Dr. Clark also gave an opinion that the etiology of Claimant's pain was unclear. He believed Claimant more likely suffered from hyperalgesia than fibromyalgia. (Tr. 1279).

With regard to Claimant's mental impairments, the ALJ discussed the consultative examination of Claimant by Larry Vaught, Ph.D. Dr. Vaught examined Claimant on September 12, 2016, noting Claimant reported using opioids, alcohol, and marijuana to relieve his pain. He reported depression, anxiety, and anger related to his pain. Claimant obtained a full scale IQ of 102, with working memory scores in the low range for auditory memory, but visual memory scores were above average. He assessed Claimant with depressive disorder and cognitive disorder. (Tr. 1277, 1125-29). Dr. Vaught completed a mental medical source statement, finding Claimant markedly limited in the ability to understand, remember, and carry out complex instructions. He was moderately limited in the ability to make judgments on complex work-related decisions and mildly limited in the ability to understand, remember, and carry out simple instructions. Dr. Vaught also

9

determined Claimant was moderately limited in the ability to interact appropriately with the public, supervisors, and co-workers, and to respond to usual work situations and changes in routine work settings. (Tr. 1282, 1122-24).

The ALJ discussed the opinion evidence in detail in his decision. Contrary to Claimant's arguments, he appropriately considered and weighed the opinions of Dr. DeLaughter, Dr. Clark, and Dr. Vaught. "As long as the ALJ provides 'good reasons in his decision for the weight he gave to the . . . opinion[], [n]othing more [is] required[.]' . . . What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer[] that weight the adjudicator gave to the . . . opinion and the reasons for that weight.'" *Mounts v. Astrue*, 479 Fed. Appx. 860, 865 (10th Cir. 2012), quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

As discussed herein, the ALJ discussed Dr. DeLaughter's examination findings and the limitations he assessed on the medical source statement. With regard to Claimant's reaching limitations, the ALJ determined that the objective testing throughout the record did not support a limitation that Claimant was precluded from overhead reaching or limitation to occasional reaching in all other directions. He determined the medical evidence did not support a limitation to frequent handling, fingering, and feeling. The ALJ concluded that although Dr. DeLaughter's opinions were given some

10

weight (with regard to limitations not challenged by Claimant herein), the degree of limitation was not consistent with the totality of the medical evidence in the record or Dr. DeLaughter's own evaluation. (Tr. 1281-82).

The ALJ also considered the testimony of Dr. Clark with regard to Dr. DeLaughter's examination findings. He assigned great weight to Dr. Clark's discussion of Dr. DeLaughter's examination findings. (Tr. 1276). With regard to Dr. Clark's testimony overall, the ALJ assigned it great weight based upon his thorough study of the medical evidence. He noted that Dr. Clark did not disagree with Dr. DeLaughter's opinion limiting Claimant to lifting and/or carrying ten pounds. The ALJ noted he had considered Dr. Clark's opinions concerning Claimant's functional limitations and had given them some weight, as Claimant was limited to sedentary lifting and carrying. The ALJ determined that the evidence did not support a limitation based on pain from frequent use of the elbows, other than the limitations included in the RFC. (Tr. 1281).

The ALJ further considered and weighed Dr. Vaught's findings. He discussed Dr. Vaught's examination findings and the completed mental medical source statement. He assigned little weight to Dr. Vaught's diagnosis of cognitive disorder based upon the totality of the medical evidence and Claimant's educational history. (Tr. 1277). He concluded that Dr. Vaught's moderate limitations with

11

regard to interacting appropriately with the public, supervisors, and co-workers, and to respond to usual work situations and to changes in a routine work setting were given little weight, because the medical evidence and Dr. Vaught' own examination findings did not support moderate limitations in the areas. (Tr. 1282).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id*. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence. This Court finds no error in the ALJ's RFC determination.

Claimant further contends the ALJ failed to properly evaluate his subjective allegations. The ALJ summarized Claimant's testimony at length. (Tr. 1268-71). He concluded, however, that his statements were inconsistent with the medical evidence, including X rays, MRIs and examination findings that did not exhibit the alleged severity of Claimant's shoulder limitations or mental health issues. The ALJ thoroughly discussed the various inconsistencies in the medical evidence and the lack of support for his subjective limitations. (Tr. 1272-79). This Court finds no error in the ALJ's analysis.

**Step Five Determination**

Claimant asserts the ALJ's hypothetical questioning of the VE was improper because he failed to include all of Claimant's limitations in the RFC.

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the VE, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996).

Moreover, Defendant bears the burden at step five of the sequential analysis. *Hargis*, 945 F.2d at 1489.

The Court finds no error in the ALJ's questioning of the VE. The hypothetical questions to the VE included those limitations found to exist by the ALJ and included in the RFC. *See Qualls*, 206 F.3d at 1373 (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment."), citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993).

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 3rd day of April, 2020.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE